IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HUNG THE PHAM, | : | MOTION TO VACATE |
| BOP No. 57636-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 1:10-cv-3679-JEC-ECS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|     Respondent. | : | 1:05-cr-543-15-JEC-ECS |

**ORDER**

This matter is before the Court on Hung The Pham's ("Movant's") objections [1670] to a Final Report and Recommendation ("Final R&R") [1660] recommending that his 28 U.S.C. § 2255 habeas corpus motion [1551] be dismissed and that no certificate of appealability be issued. After thorough review and "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1), the Court **OVERRULES** Movant's objections and **ACCEPTS** and **ADOPTS** the Final R&R as the Order of this Court.

**BACKGROUND**

On December 12, 2006, a federal grand jury sitting in the Northern District of Georgia indicted Movant on five counts: conspiracy to possess with the intent to distribute MDMA, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(vii), and 841(b)(1)(C); possession with the intent to distribute marijuana, in violation of

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A); conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1), 1957, and 1956(h); and money laundering, in violation of 18 U.S.C. § 1957.

On July 10, 2008, Movant pleaded guilty to conspiracy to possess with the intent to distribute MDMA, methamphetamine, and marijuana, and conspiracy to commit money laundering. The remaining counts were dismissed. Movant's plea was made pursuant to a plea agreement, which contained a limited waiver of his rights to appeal and collaterally attack his sentence in any post-conviction proceeding. (Guilty Plea [1191-1] at ¶ 18.)

United States Magistrate Judge E. Clayton Scofield, III, conducted the plea hearing on July 10, 2008. At the hearing, Judge Scofield determined that Movant, who is originally from Vietnam but has lived in the United States since the late 1970s, understood English sufficiently to comprehend the hearing, and Movant agreed to notify his counsel and the Court if he did have any difficulty understanding the proceedings. (Plea Hr'g Tr. [1560] at 7-8.) After the hearing, Judge Scofield issued a report recommending that the Court accept the plea. (Guilty Plea R&R [1193].) On July 17, 2008, this Court adopted Judge Scofield's Report and Recommendation. (Order [1205].)

On October 26, 2009, following a sentencing hearing, the Court sentenced Movant to 235 months imprisonment on each count, with the sentences to run concurrently, followed by five years of supervised release. (J. and Commitment [1447]; *see also* Am. J. and Commitment [1459].) Movant did not file an appeal of his convictions or sentences.

On November 10, 2010, Movant timely filed a *pro se* motion under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence.[1] Movant's § 2255 motion raised five grounds for relief, captioned: "(Ground 1) Ineffective Assistance"; "(Ground 2) Fair Trial and Due Process"; "(Ground 3) Ineffective Assistance, Fair Trial and Due Process"; "(Ground 4) Unreasonable Delay"; and "(Ground 5) Guilty Plea Not Knowing and Voluntary." (Movant's Mot. to Vacate [1551] at 7-11.)

On February 11, 2011, the Government responded in opposition to Movant's petition. (Resp. [1567].) The Government argued that all of Movant's claims were precluded by the waiver of appeal and

---

[1] The Court notes that Movant's objections indicate that they were prepared by Frank L. Amodeo. (*See* Movant's Obj. [1670] at 12.) Amodeo is a disbarred attorney, now serving a 270-month term of imprisonment, who has twice been convicted and sentenced for fraud. *See United States v. Amodeo*, No. 6:08-cr-176-JA-GJK (M.D. Fla. May 26, 2009); *United States v. Amodeo*, No. 1:98-cr-76-GET-JMF (N.D. Ga. Oct. 30, 1998). Despite Amodeo's former status as a member of the bar, the Court has construed Movant's filings under the liberal standards applicable to *pro se* litigants.

collateral attack, except for Ground 5, which the Government construed as a claim of ineffective assistance of counsel that rendered the guilty plea not knowing or voluntary. (*Id.* at 6.) The Government addressed this claim, citing evidence from the sentencing transcript that Movant had indeed knowingly and voluntarily agreed to the plea. (*Id.* at 10-12.)

On April 15, 2011, Movant filed a traverse of the Government's Response. (Traverse [1572].) Movant there elaborated on his claim that his plea was not knowing and voluntary by introducing the argument that his understanding of English was insufficient for him to have knowingly and voluntarily agreed to the plea. Movant stated:

> [Movant] has only a limited grasped [sic] of the English language and does not understand the specialized or technical meaning of words. [Movant's counsel] never had an interpreter present to ensure [Movant] really understood the meaning of the legal terms relevant to (1) assisting with the case or (2) making an informed decision to the plea guilty [sic]. This failure resulted in the unknowing guilty plea and was ineffective assistance of counsel.

(*Id.* at ¶ 4.) Although Movant had raised the ineffective assistance of counsel argument in his petition, he had not prior to the traverse argued that his understanding of English was inadequate and unremedied by interpreters, such as to render his guilty plea unintelligent and involuntary.[2]

---

[2] The Court notes that introducing the new argument in his traverse was procedurally improper. Any argument "first presented in [a] traverse rather than in [a] habeas petition, . . . [is] not

4

On September 27, 2012, Judge Scofield issued his Final R&R. Because the terms of Movant's plea agreement waived his collateral attack rights, except in circumstances not applicable here, the Final R&R focused on the Ground 5 ineffective assistance of counsel claim. The Final R&R determined that Movant's contention in Ground 5--that his plea was not knowing and voluntary--was unfounded. (Final R&R [1660] at 3-5.) The Final R&R did not, however, directly address Movant's argument that his English comprehension was so deficient as to prevent him from understanding the proceedings and that the interpreter provided at the sentencing hearing was inadequate to remedy this. Movant reiterated the argument in his objections to the Final R&R. (Movant's Obj. [1670] at 2-4.) The Court addresses that argument here.

---

properly before the district court." *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). *See also Jalowiec v. Bradshaw*, 657 F.3d 293, 311-12 (6th Cir. 2011)(same); *Thompkins v. McKune*, 433 Fed. App'x 652, 659 (10th Cir. 2011)("raising an issue for the first time in a reply brief or traverse is insufficient to preserve it"); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997)("a [t]raverse is not the proper pleading to raise additional grounds for relief")(internal quotations omitted); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)("A Traverse is not the proper pleading to raise additional grounds for relief.").

Nonetheless, as the Court construes *pro se* pleadings liberally, the Court presumes that Movant attempted to base the ineffective assistance of counsel claim in his petition, in part, on his language difficulties.

5

**DISCUSSION**

Movant moved from his native Vietnam to the United States as an adolescent in the 1970s. (Movant's Obj. [1670] at 4.) In the United States, he completed high school and took some college courses. (*Id.*) Despite this evidence of at least basic English comprehension, Movant states that his "limited comprehension of the English language. . . substantially imparied [sic] his ability to clearly and accurately understand the circumstances and consequences of his conduct as relayed to him, without assistance of an interpreter, by his attorney, the AUSA, and the Court." (Movant's Obj. [1670] at 2.)

Movant first points out that there were interpreters provided at his sentencing hearing, but not at his earlier plea hearing. (*Id.*) At the beginning of the plea hearing, Judge Scofield inquired as to Movant's comprehension of English:

    [Court]:   And you do understand English?  You speak
               English well?
    [Movant]:  Eighty percent.
    [Court]:   All right.
    [Movant's Counsel]: He speaks English.
    [Court]:   Well enough?
    [Movant's Counsel]: He speaks it enough that we have been
                        able to communicate over the life of
                        this case without having to have an
                        interpreter render assistance.
    [Court]:   All right.  You speak good English, then?
    [Movant]:  No response.
    [Court]:   And if there is anything that you do not
               understand as we go along, do not hesitate to
               stop and inquire and make clear.  I want to make
               sure that everything that we talk about today
               you understand.  So if you have any problems

6

>                    with that, then you let the Court of your
>                    counsel know?
>      [Movant]: Okay.

(Plea Hr'g Tr. [1560] at 7-8.)  Satisfied that Movant could understand the proceedings, or would make his incomprehension known to his counsel or the Court, Judge Scofield conducted the plea hearing without an interpreter.

As for the sentencing hearing, Movant complains that the initial interpreter was only able to do consecutive translation, which creates a more halting, less fluid communication; only later did an interpreter arrive who could do simultaneous translation. (Movant's Obj. [1670] at 3.)  He further points to the sentencing transcript, which records several incidents where the interpreters had difficulty keeping up with the proceedings. (*Id.* at 2-3; Sent. Hr'g Tr. [1500] at 25.)  Indeed, the initial interpreter did urge the speakers to give him time after each sentence to translate, which was a helpful suggestion to insure complete translation of what was spoken. (Sent. Hr'g Tr. [1500] at 19.)[3]

Granted this "consecutive" translation process was very frustrating for counsel and the Court, as speakers had to stop

---

[3] The cumbersome translation process experienced at this proceeding is, unfortunately, not atypical for proceedings that require the translation of Vietnamese into English. Apparently, for reasons unique to some Asian languages, and particularly the Vietnamese language, the process is typically a slow and halting one.

frequently in their remarks to let the interpreter catch up, it actually benefitted the defendant. That is, as his attorney admitted, with consecutive translation, the defendant got to hear what was said twice: once in its original English, a language that the defendant could understand and speak, and next in his native Vietnamese. (*Id.* at 8.)

While it is true that the translation process can slow down a proceeding, as it did here, what is important is that the defendant was able to understand what was said. And he certainly was able to do so, as he could speak English (and thereby understand what was said by each speaker) and he was also receiving Vietnamese translations, which insured that he understood everything that was being spoken.

Indeed, at the outset of the sentencing hearing, the Court inquired of Movant's counsel about Movant's English language proficiency. Movant's counsel responded that he and Movant "have always worked together without an interpreter, but I think because of the nature of this hearing, he wanted a backup to hear both in English from the Court and in Vietnamese from the interpreter." (*Id.* at 6.)[4]

---

[4] Interpreters were required at the sentencing hearing in any case, as some of Movant's co-defendants, who were also native Vietnamese speakers, had very little English comprehension.

8

Moreover, despite the occasional difficulty in the translation during the sentencing hearing,[5] Movant seemed to understand quite well what was being said in English. When, in the course of the hearing, the Court asked Movant's counsel if Movant was understanding the proceedings, counsel responded, "He is doing fine. Throughout the four years that I have represented [Movant] we have always worked without an interpreter and he has not totally relied on the interpreter but he does want to say that the consecutive interpretation is not very accurate." (*Id.* at 38.) At another point, Movant's counsel interrupted, stating "We are going too fast. Excuse me. [Movant] understands, but for the benefit of the two [co-defendants] that are dependent on the interpreter, the momentum is going faster than the interpreter can keep up with." (*Id.* at 25.) In short, the above remarks indicate that Movant understood the English spoken at the hearing quite well--and so well that he was able to critique the Vietnamese interpreter's translation for its inaccuracies. Further, if Movant was confused, the transcript shows that the Court had given him ample opportunity and encouragement to

---

[5] It is not clear whether any translation difficulties were somewhat magnified by some of the defendants for the purpose of creating some mischief during the proceedings. Specifically, after a break, the Court informed counsel and the parties that the Marshal reported back that, notwithstanding their complaints, all the defendants seemed to be able to speak "wonderful English" in lockup. (*Id.* at 37.)

make that known.

Where a criminal defendant like Movant swears to the Court during a Rule 11 proceeding that he is capable of proceeding in English without a translator, comprehends the Court's questions to him and answers them directly in English, and is on that basis determined by the judicial officer who observed and interacted directly with him to have knowingly and voluntarily entered a guilty plea, his later conclusory allegation, contradicted by the record, that his comprehension of the English language was so limited that he is entitled to withdraw his guilty plea and avoid the terms of his plea agreement is unavailing.

The Final R&R correctly determined that Movant bore the "heavy burden to show that his statements under oath were false" and that he did not do so simply by making "allegations [that] are in direct conflict with his statements during the plea colloquy," particularly where he "produced no evidence to challenge the veracity of his sworn testimony." *Patel v. United States*, 252 Fed. App'x 970, 974-75 (11th Cir. 2007)(citations omitted).  Indeed, "self-serving statements [that] appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver" are not required to be credited and do not warrant an evidentiary hearing. *Id*. Movant's contentions about his supposed ignorance of English are precisely the sort of "self-serving statements [that] appear to be a last-minute attempt to

10

escape the preclusive effect of the appeal waiver" that *Patel* tells us are not required to be credited and do not warrant an evidentiary hearing.

All of Movant's other grounds for relief--and other objections to the Final R&R--were waived pursuant to the enforceable collateral attack waiver in his plea agreement, and none of them needs to be addressed further on the merits.  Indeed, the waiver of collateral attack rights would otherwise be pointless, and it is the law in this Circuit that such waivers are enforceable when entered into knowingly and voluntarily.

Movant's Objections [1670] are **OVERRULED**, and the Final R&R [1660] is **APPROVED** and **ADOPTED** as the Order of this Court.  For the reasons set forth in the Final R&R, a Certificate of Appealability is **DENIED**.

**IT IS SO ORDERED,** this 28th day of MARCH, 2014.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE